*DANIFF, J.
Proceeding to consider the causes of error in the order in which they are assigned in the petition, it seems to me that there is no just exception to the action of the Circuit court in excluding the deposition of the witness Stiles. It appears from the bill of exceptions, that no commission for taking the deposition, no notice of the time and place of taking it, was .produced; the record did not show that a commission had been awarded, and the justices in their certificate do not state that they took the deposition by virtue of a commission. There was thus an absence of all proof to show that the plaintiffs had complied with the conditions on the performance of which their right to read the deposition depended. The failure to object to the deposition on this score, before it was offered on the trial, was no _ waiver of the objection. It was for the.’ plaintiffs to show either an observance of the requirements of the statute under which they claimed a right to read the deposition, or that the defendants had waived or dispensed with it. Whether an appearance of the defendants by counsel, at the time and place of taking the deposition, might have been taken as the evidence of such waiver, is a question which cannot be raised. The only evidence of such appearance is in the certificate of the justices: And as it does not appear that they acted under a commission, they had no warrant or authority to speak in the matter; and their certificate is without force or virtue as proof in the cause.
No ground is laid on which to raise the question which the plaintiffs seek to present by the second cause of error assigned. In the fourth section of the act of 1778, for preventing the importation of slaves, 9 Hen. St. at Farge 471, an exception is made in favor of persons removing from any other of the United States into this; provided that within a certain period after their removal they take an oath to the effect that xtheir removal into the state is not made with an intention to evade the *675 provisions of the act, and that they have not brought their slaves with an intention of selling them. And by repeated adjudications of this court (as in Abraham v. Mathews, 6 Munf. 159, George v. Parker, 4 Rand. 659), made in cases arising under acts containing like provisions, it has been settled that twenty years’ possession, by the master, of slaves thus brought into the state, without any claim of freedom on the part of the slaves, justifies the presumption that the master had duly taken the oath required by law. How such a claim should be asserted in order to have the effect of repelling this presumption, has never been decided by this court, and does not arise for consideration now. It is obvious, however, that no matter what may be the essentials of such a claim, or how it must be asserted, it can be of no avail unless made within the twenty years before the presumption has matured. It appears from Carter’s statement that Charlton had purchased Plora, the ancestress of the plaintiffs, at least forty-five years before the date of his deposition; and he no where fixes the date of the loose declarations of Plora, that “if she had her just rights, she would be a freewoman.” These declarations, from aught that appears to the contrary, may have been made long after the presumption had attached; and were therefore plainly inadmissible as testimony for any purpose. The opinion of the witness in respect to the temper and character of Charlton as a master, was, I think, equally inadmissible. If such testimony could be resorted to as furnishing a reason or argument why the presumption should not be allowed, it would be equally proper to go into proofs of the character of the slaves, as whether remarkable for timidity or otherwise. Such proofs, it is manifest, would rather serve to dissipate the attention of the jury, and to invite them into the indulgence of loose surmise and conjecture, than to *guide them to those results which it is the aim and tendency of legitimate testimony to establish. The exception to the testimony was, I think, properly sustained by the court.
I cannot perceive any force in the objection to the releases executed to the witness Simpkins, on the score that they were not executed by all of the defendants. No good reason is suggested why such a release should be made by any one but Taylor, the personal representative of Charlton. No suit could be maintained against Simpkins for a breach of the warranty, whether express or implied, of the title to the plaintiffs as slaves, by any one but Charlton’s representative, and the release of all right of recovery by him divested the witness of all interest in the controversy, in respect to all of the plaintiffs embraced in the release.
The further objection made to the releases, that they do not extend to all the plaintiffs in each of the suits, is met by the statement of the judge in the bill of exceptions, that “it was agreed by the counsel on both sides that the evidence taken in one case should be read in all.” The terms of this agreement, it is obvious, are fully satisfied when it is shown that the deposition would have been legal evidence in any one of the cases: And as it is conceded that the releases embrace all of the plaintiffs in one of the suits, I see no reason why the agreement should not be allowed to cure the omission in the releases. The convenience of both sides was no doubt promoted by the agreement. The plaintiffs in each of the suits were all descended from one common ancestress; the testimony in respect to the claim of one was equally applicable to the claim of each; and it is difficult to conceive of injury resulting to the rights of any of them from the court’s enforcing the agreement according to its terms. The third ground of error is, therefore, I think, untenable.
The fourth assignment of error raises a question *which, it is somewhat remarkable, has never before been distinctly presented to this court for its decision, to wit, whether a witness who has testified in a cause may be impeached by the proof of contradictory or inconsistent statements, alleged to have been made by him on other occasions, before the foundation for the introduction of such impeaching testimony is first laid, by an examination of the witness touching the fact of his having made such statements. In the Queen’s Case, 2 Brod. & Bing. 292, 6 Eng. C. L. R. 121, the question, so far as it relates to examinations in courts, was very fully discussed, and was decided in the negative by the unanimous opinion of the judges. This case occurred in 1820. The rule there stated has been adhered to in numerous cases since decided, and may now be regarded as firmly established in England. In some of the United States the courts have refused to adopt the rule; but I am satisfied, as well from an examination of such of the reports as are to be found in our library, as from a statement ,of Mr. Greenleaf in a note to his Treatise on the haw of Evidence, p. 579, that the rule has obtained in a large majority of the states of our Union.
In the case of Downer v. Dana, 19 Verm. R. 338, a distinction is taken between the case of a witness examined in court and one who has given his testimony in the form of a deposition. In that case the court sanctions, and expresses a determination to adhere to, the rule, that testimony, as to the previous declarations of a witness produced upon the stand, offered for the purpose of impeaching him, is not to be received, unless an opportunity be first afforded him to explain or qualify the imputed declaration. But it still decides that the rule has no application to testimony in the shape of depositions, whether taken with or without notice, and whether the adverse party attended at the taking or not, and that the adverse party *may in such case, without previous enquiry, prove any inconsistent declarations or conduct of the witness.
*676 After a careful examination of the opinion in which this distinction is taken, I have been unable to perceive the force of the reasoning on which it is made to rest. The principal reason assigned by the learned judge who delivered the opinion of the court, for refusing to apply the rule to depositions, is, that such a practice would impose on a party, wishing the privilege of iuipeachment, the necessity of attending in -person or by attorney at the taking of every deposition to be used against him, within or without the state, which, on any other account, he might not be disposed to do. This argument ab inconvenienti is not wholly without show of reason when urged in behalf of the exercise of the privilege of impeachment by a party who has had no notice of the taking, or who, though notified, did not attend at the taking of a deposition which he seeks to discredit, but seems to me devoid of weight when extended to the case of a party who was present at the taking of the deposition, and had thus the same opportunity of cross-examining the witness, and calling his attention to the imputed inconsistent statements, that he would or might have had, in case the witness had been examined in court.
I have seen no other case in which this distinction has been taken, whilst in a number of cases decided by the courts of New York, Tennessee, Alabama and Mississippi, the rule has' been held applicable as well, fo depositions as to the oral examinations of witnesses on the stand. Kimball v. Davis, 19 Wend. R. 437; Same Case, affirmed in the Court of Errors, 25 Wend. R. 259; Story v. Saunders, 8 Hump. R. 663; Richmond v. Richmond, 10 Yerg. R. 343; Howell v. Reynolds, 12 Alab. R. 128; Sawyer v. Sawyer, Walk. Ch. R. 48. And in the case of Conrad v. Guffey, 16 How. *Sup. Ct. R. 38, recently decided by the Supreme court of the United States, the authorities are fully examined and reviewed in the arguments of counsel and in the opinion of the court delivered by Justice McEean.
The effort there was to discredit a witness, who had given a deposition under a commission; by proof of antecedent contradictory statements; and the court were unanimous in the opinion, that as the witness had not been interrogated as to those statements when he was examined, the proof was not admissible. And the court quotes with approbation the opinion of the Supreme court of New York in the case of Kimball v. Davis, just cited, holding that where the imputed contradictory statements are alleged to have been made since the taking of the deposition, the adverse party can avail himself of such statements only by taking out a second commission.
The rule, we are told in Greenleaf on Evidence 579, proceeds from a sense of justice to the witness; for as the direct tendency of the evidence is to impeach his veracity, common justice requires that by first calling his attention to the subject, he should have an opportunity to recollect the facts, and if necessary to correct the statement already given, as well as by a re-examination to explain the nature, circumstances, meaning and design of what he is proved elsewhere to have said. These, reasons, it is obvious, apply just as forcibly to depositions as to oral examinations in court. And indeed there are considerations which urge the application of the rule to the case of an impeachment of a witness who has given his testimony in the form of a deposition, which may not arise in an effort to discredit a witness who has been examined in court. In the latter case the witness usually remains in or about the court till the trial is concluded; and if an assault is made upon him by proof of inconsistent *statements, he might, even before the adoption of the rule requiring him to be first examined as to such statements, . be recalled and re-examined by the party in whose favor he had testified; and he may thus have an opportunity of repelling or explaining away the force of the assault: Whereas the witnesss whose deposition has been taken is usually absent from the scene of the trial, and has no shield against attacks on his veracity other than that provided by the rule. And as was very justly said by Chief Justice Nelson in Kim-ball v. Davis, in the absence of such a rule, strong temptations would exist for tampering with witnesses, and for perverting or manufacturing conversations after the taking of the depositions, and when explanations would be impossible.
Upon the whole, the rule appears to me to be a safe, just and- convenient one; and I can see no good reason for refusing to follow the current of authority, in adopting it as a general rule. Cases may be supposed in which the courts may be strongly called upon to dispense with, or to make exceptions to the rule; and I will not undertake to say that special exigencies may not occasionally arise, requiring the courts to depart from the rule, rather than to sacrifice justice by sternly' adhering to it. The same remark may, however, be justly made in respect to most rules of a like character, and suggests no serious objection to the adoption and observance of the rule in question as a general one.
There are no peculiar considerations calling upon us to exempt this case from the operation of the rule: Eor it appears from the deposition, that the plaintiff’s counsel was not only present at the taking, but exercised on the occasion his privilege of cross-examining the witness. And as it does not appear that any predicate was laid in the course of the examination, for the introduction of proof of the inconsistent declarations *offered on the trial to impeach the witness, the court, I think, did right in refusing to allow such proof to go to the jury.
The fifth bill of exceptions to the course of the court furnishes, I think, no ground of error. The defendants had a right to be present at court, as well as at the taking of *677 the deposition. And it is manifest from the facts set out in the bill of exceptions, that they could not have attended the taking- of the depositions and then have reached the court by the commencement of its session: And the exception to the reading of Gardner’s deposition was, I think, properly sustained.
I have been unable to discover any error in the action of the court, and am for affirming the judgment.
The other judges concurred in the opinion of Daniel, J.
Judgment affirmed.